UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2018-C44, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-C44, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of May 1, 2018, | Case No.: |
| Plaintiff, | |
| v. | |
| 31 PRINCE STREET, LLC; WAH KOK REALTY CORP.; EDMOND LI; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS; and "JOHN DOE NO. 1" to "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint, | **COMPLAINT** |
| Defendants. | |

Plaintiff Wilmington Trust, National Association ("Trustee"), As Trustee For The Benefit of The Registered Holders of Wells Fargo Commercial Mortgage Trust 2018-C44, Commercial Mortgage Pass-Through Certificates, Series 2018-C44 (the "Trust") (Trustee as trustee of the Trust shall be referred to hereinafter as "Plaintiff"), acting by and through its special servicer, Rialto Capital Advisors, LLC ("Special Servicer"), as Special Servicer under the Pooling and Servicing Agreement dated as of May 1, 2018 (the "PSA"), alleges and states as follows:

## THE PARTIES

1.     Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Wilmington, Delaware.

2.     Trustee is the duly appointed and presently serving trustee of the Trust created under the PSA.

3.     Trustee, not individually, but solely in its capacity as trustee for the Trust under the PSA, acting by and through the Special Servicer, brings this action with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth.  Based upon Delaware being the state of citizenship of Trustee, Plaintiff is therefore a citizen of the State of Delaware.

4.     Defendant 31 Prince Street, LLC ("Prince Borrower") is a New York limited liability company, having its principal place of business at c/o Veracity Real Estate, 199 Lafayette Street, 5th Floor, New York, New York 10012 Attn: Edmond Li.  As Prince Borrower is a limited liability company, its citizenship is determined by that of its members.   Upon information and belief, defendant Edmond Li ("Guarantor"), a citizen of the State of New York, and 31 Prince Street Manager, Inc., a New York corporation, are the sole members of Prince Borrower.  Based on the New York citizenship of its members, Prince Borrower is a citizen of the State of New York.

5.     Defendant Wah Kok Realty Corp. ("WK Borrower", and together with Prince Borrower, and their respective successors and assigns, individually or collectively, "Borrowers") is a New York corporation, having its principal place of business at c/o Veracity Real Estate, 199 Lafayette Street New York, New York 10012 Attn: Aqueelah McKinley.  As WK Borrower was incorporated in New York, WK Borrower is a citizen of the State of New York.

6.     Plaintiff names Borrowers as party defendants herein because they are the owner of certain real properties and improvements located at (i) 31 Prince Street a/k/a 242-244 Mott Street, New York, New York 10012 and designated as Block 508, Lot 53 as shown on the Tax Map of the City of New York, County of New York, (ii) 46 Prince Street a/k/a 250 Mulberry Street, New York, New York 10012 and designated as Block 494, Lot 14 as shown on the Tax Map of the City of New York, County of New York, and (iii) 48 Spring Street a/k/a 207-211 Mulberry Street, New York, New York 10012 and designated as Block 481, Lot 22 as shown on the Tax Map of the City of New York, County of New York, and as more particularly described in Exhibit A annexed hereto and made a part hereof (collectively, the "Mortgaged Premises"), obligors of the Note (as defined below), and mortgagors of the Mortgage (as defined below).

7.     Upon information and belief, Guarantor is an individual having an address of c/o Veracity Real Estate, 199 Lafayette Street, 5th Floor, New York, New York 10012 and a citizen of the State of New York.  Plaintiff names Guarantor as a party defendant herein because he guaranteed Borrowers' obligations with respect to the Loan (as defined below) pursuant to the Guaranty (as defined below).

8.     Defendant New York Department of Finance ("DOF") is, upon information and belief, a municipal entity maintaining an address at 1 Centre Street, New York, New York 10007 and citizen of the State of New York.  Plaintiff names DOF as a party defendant herein solely because of any title or claim it might have against the Mortgaged Premises as a result of any unpaid New York City business corporation taxes and to extinguish such right, title, claim or interest in the Mortgaged Premises.

9.     Defendant New York City Office of Administrative Trials and Hearings ("OATH") is, upon information and belief, a municipal entity maintaining an address at 100

Church Street, 12th Floor, New York, New York 10007 and citizen of the State of New York. Plaintiff names OATH as a party defendant herein solely because of any title or claim it might have against the Mortgaged Premises as a result of any unpaid fines, violations and/or judgments issued against the Mortgaged Premises and to extinguish such right, title, claim or interest in the Mortgaged Premises, including but not limited to, the violations and/or judgments against the Mortgaged Premises referenced in ECB Violation No. 35461121X, in the original amount of $625.00.

10.     Defendants John Doe No. 1 through John Doe No. 100, inclusive, are fictitious and unknown to Plaintiff and Plaintiff names them as party defendants herein to designate any and all tenants, occupants, persons, corporations or other entities, if any, having or claiming an interest in or lien upon the Mortgaged Premises or any part thereof, which is subject to the lien of the Mortgage.

11.     Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a)(2) because it is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.     Pursuant to Section 10.6 of the Loan Agreement, the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract. Specifically, Section 10.6 of the Loan Agreement provides in relevant part:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW YORK COUNTY, NEW YORK AND BORROWER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. BORROWER AGREES THAT

4

SERVICE OF PROCESS UPON BORROWER AT THE ADDRESS FOR BORROWER SET FORTH HEREIN AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.

13.     Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3).

14.     Plaintiff brings this action to, inter alia, foreclose a mortgage in the original principal amount of $41,000,000.00 that is secured by, inter alia, the Mortgaged Premises.

## FACTUAL BACKGROUND

### FIRST COUNT
**(Mortgage Foreclosure)**

**A.     The Loan and the Loan Documents**

15.     Pursuant to that certain Loan Agreement dated as of March 14, 2018 (the "Loan Agreement") and executed by and between Borrowers and Argentic Real Estate Finance LLC ("Original Lender"), Plaintiff's predecessor-in-interest, Original Lender made a loan to Borrowers in the original principal amount of $41,000,000.00 (the "Loan").

16.     To evidence its indebtedness under the Loan, on or about March 13, 2018, Borrowers executed and delivered, inter alia, to Original Lender that certain Amended, Restated and Consolidated Promissory Note in the original principal amount of $41,000,000.00 (the "Note"), payable on the sixth day of each and every month from May 6, 2018 until April 6, 2028 (the "Maturity Date"), at which time all unpaid principal, accrued and unpaid interest and all other amounts due under the Loan Documents (as defined below) (collectively, the "Debt"), would be due and payable in full, unless earlier accelerated.

17.     As collateral security for the payment of the Loan, on or about March 13, 2018, Borrowers executed, acknowledged and delivered to Original Lender that certain Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), pursuant to which Borrowers, inter alia, granted to Original Lender a security interest in the Mortgaged Premises.  On March 22, 2018, Original Lender duly recorded the Mortgage with the Office of the City Register of the City of New York (the "City Register's Office") as City Register File No. ("CRFN") 2018000097778.

18.     The Mortgage also includes a security interest in favor of the holder of the Mortgage in, inter alia, the buildings, structures, fixtures and other improvements now or hereafter located on the Mortgaged Premises, including, but not limited to, the Mortgaged Property, the Equipment, the Leases, the Rents, and the Intangibles (all as described and defined in the Mortgage), and such other property that may be subject to the Uniform Commercial Code (collectively, the "Collateral").  The Collateral is more particularly described in Exhibit B annexed hereto and made a part hereof.

19.     As additional collateral security for the payment of the Loan, Borrowers executed, acknowledged and delivered to Original Lender that certain Assignment of Leases and Rents dated as of March 13, 2018 (the "ALR") pursuant to which Borrowers, inter alia, granted to Original Lender a security interest in all Leases and Rents (as described and defined in the ALR) generated by the Mortgaged Premises.  On March 22, 2018, Original Lender duly recorded the ALR with the City Register's Office as CRFN 2018000097779.

20.     The ALR absolutely and unconditionally grants, transfers and assigns all right, title and interest in all current and future leases and rents in connection with the Mortgaged

Premises.  Original Lender and Borrowers intended for this assignment to constitute a present, absolute and unconditional assignment and not an assignment for additional security only.

21.     To perfect its interest in the Collateral, on March 22, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement with the City Register's Office as CRFN 2018000097780 (the "County UCC-1").  The County UCC-1 names Original Lender as the secured party and Borrowers as the debtors.

22.     To further perfect its interest in the Collateral, on March 26, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement with the Secretary of the State of New York ("Sec. of State") as Filing Number 201803260141425 (the "State UCC-1").  The State UCC-1 names Original Lender as the secured party and Borrowers as the debtors.

23.     In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantor executed that certain Guaranty of Recourse Obligations executed as of March 13, 2018 (the "Guaranty"), wherein and whereby Guarantor irrevocably and unconditionally guaranteed to Original Lender, its successors and assigns, the payment and performance of the Guaranteed Obligations, as defined therein, as and where the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise (The Loan Agreement, the Note, the Mortgage, the ALR, the County UCC-1, the State UCC-1, and all other documents executed in connection with the Loan shall be referred to collectively herein as the "Loan Documents").[1]

**B.      Original Lender's Assignment of the Loan Documents to Interim Holder**

---

[1] Capitalized terms not defined herein shall have the same meaning as ascribed in the Loan Documents.

24.     Original Lender executed an allonge to the Note dated March 13, 2018 (the "Initial Allonge") and indorsed in favor of SPREF WH II LLC ("Interim Holder") and delivered the Note, with the Initial Allonge affixed thereto, to Interim Holder.  By virtue of this delivery, Original Lender transferred to Interim Holder all of its rights, title and interest in and to the Note and Interim Holder became the holder of the Note.

25.     Original Lender also executed and delivered that certain Assignment and Assumption of Interest Under Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement dated March 13, 2018 (the "First Interim Assignment of Mortgage"), pursuant to which Original Lender transferred to Interim Holder all rights, title and interest in and to the Mortgage.  By virtue of the First Interim Assignment of Mortgage, Interim Holder became the holder of the Mortgage.  On April 13, 2018, Interim Holder recorded the First Interim Assignment of Mortgage with the City Register's Office as CRFN 2018000123489.

26.     Original Lender also executed and delivered that certain Assignment and Assumption of Interest Under Assignment of Leases and Rents dated March 13, 2018 (the "First Interim Assignment of ALR"), pursuant to which Original Lender transferred to Interim Holder all rights, title and interest in and to the ALR.  By virtue of the First Interim Assignment of ALR, Interim Holder became the holder of the ALR.  On April 13, 2018, Interim Holder recorded the First Interim Assignment of ALR with the City Register's Office as CRFN 2018000123490.

27.     On April 13, 2018, Interim Holder recorded a Uniform Commercial Code Financing Statement Amendment with the City Register's Office as CRFN 2018000123491, pursuant to which the County UCC-1 was assigned to Interim Holder.

#156901258_v9 527548.00059

28.     On April 15, 2018, Interim Holder recorded a Uniform Commercial Code Financing Statement Amendment with the Sec. of State as Filing Number 201804160175908, pursuant to which the State UCC-1 was assigned to Interim Holder.

**C.     Interim Holder's Assignment of the Loan Documents Back to Original Lender**

29.     Interim Holder executed an allonge to the Note indorsed in blank (the "Subsequent Allonge") and delivered the Note, with the Initial Allonge and the Subsequent Allonge affixed thereto, to Original Lender. By virtue of this delivery, Interim Holder transferred to Original Lender all of its rights, title and interest in and to the Note and Original Lender became the holder of the Note once again.

30.     Interim Holder also executed and delivered that certain Assignment of Mortgage effective May 17, 2018 (the "Second Interim Assignment of Mortgage"), pursuant to which Interim Holder transferred to Original Lender all rights, title and interest in and to the Mortgage. By virtue of the Second Interim Assignment of Mortgage, Original Lender became the holder of the Mortgage once again. On May 31, 2018, Original Lender recorded the Second Interim Assignment of Mortgage with the City Register's Office as CRFN 2018000180891.

31.     Original Lender also executed and delivered that certain Assignment of Assignment of Leases and Rents effective May 17, 2018 (the "Second Interim Assignment of ALR"), pursuant to which Interim Holder transferred to Original Lender all rights, title and interest in and to the ALR. By virtue of the Second Interim Assignment of ALR, Original Lender became the holder of the ALR once again. On May 23, 2018, Original Lender recorded the Second Interim Assignment of ALR with the City Register's Office as CRFN 2018000172539.

#156901258_v9 527548.00059

32.     On May 23, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement Amendment with the City Register's Office as CRFN 2018000172540, pursuant to which the County UCC-1 was assigned back to Original Lender.

33.     On May 23, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement Amendment with the Sec. of State as Filing Number 201805238234909, pursuant to which the State UCC-1 was assigned back to Original Lender.

**D.      Original Lender's Assignment of the Loan Documents Plaintiff**

34.     Interim Holder delivered the Note, with the Initial Allonge and the Subsequent Allonge affixed thereto, to Plaintiff.  By virtue of this delivery, Original Lender transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note.

35.     Original Lender also executed and delivered that certain Assignment of Mortgage effective May 17, 2018 (the "Plaintiff Assignment of Mortgage"), pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the Mortgage.  By virtue of the Plaintiff Assignment of Mortgage, Plaintiff became the holder of the Mortgage.  On May 31, 2018, Plaintiff recorded the Plaintiff Assignment of Mortgage with the City Register's Office as CRFN 2018000180892.

36.     Original Lender also executed and delivered that certain Assignment of Assignment of Leases and Rents effective May 17, 2018 (the "Plaintiff Assignment of ALR"), pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the ALR.  By virtue of the Plaintiff Assignment of ALR, Plaintiff became the holder of the ALR.  On May 23, 2018, Plaintiff recorded the Plaintiff Assignment of ALR with the City Register's Office as CRFN 2018000172541.

37.     On May 23, 2018, Plaintiff recorded a Uniform Commercial Code Financing Statement Amendment with the City Register's Office as CRFN 2018000172542, pursuant to which the County UCC-1 was assigned to Plaintiff.

38.     On May 23, 2018, Plaintiff recorded a Uniform Commercial Code Financing Statement Amendment with the Sec. of State as Filing Number 201805238234911, pursuant to which the State UCC-1 was assigned to Plaintiff.

39.     As a result of the foregoing, Plaintiff is the current owner and holder of the Loan Documents, including, but not limited to, the Note and the Mortgage.

**E.     Borrowers' Defaults Under the Loan Documents**

40.     Upon an Event of Default, Plaintiff may protect and enforce its rights against Borrowers and in and to the Mortgaged Premises by, inter alia, foreclosing on the Mortgage pursuant to Section 10(a)(ii) of the Mortgage.   Moreover, under Section 8.2.2 of the Loan Agreement, Plaintiff's remedies under the Loan Documents are cumulative and concurrent and may be pursued independently, singly, successively, together or otherwise.

41.     The Loan Documents further provide that, upon the occurrence of an Event of Default, the whole principal sum shall bear interest at a default rate set forth therein (the "Default Rate").   The Default Rate is equal to the lessor of (i) the maximum rate permitted by applicable law, or (ii) five percent (5%) above the Interest Rate.

42.     The Loan Documents further provide that, upon the occurrence of an Event of Default, the holder of the Mortgage shall be entitled to collect the rents and profits from the Mortgaged Premises or to have a receiver appointed to take possession of the Mortgaged Premises and to collect the rents and profits therefrom.

43. The Loan Documents further provide that, upon an Event of Default, Borrowers shall be liable for all costs incurred for collecting, securing or attempting to collect or secure any amounts due under the Loan Documents, including attorneys' fees and other legal costs.

i. **The Payment Default**

44. Section 2.2.1 of the Loan Agreement provides, in relevant part, that:

"[o]n May 6, 2018 and each Payment Date thereafter for the remainder of the Term, Borrower shall pay the interest on the unpaid Principal accrued at the Interest Rate during the Interest Period immediately preceding such Payment Date . . . . If the Loan is repaid on any date other than on a Payment Date (whether prior to or after the Stated Maturity Date), Borrower shall also pay interest that would have accrued on such repaid Principal to but not including the next Payment Date.

45. Section 8.1(a) of the Loan Agreement provides, in relevant part, that if "any portion of the Debt is not paid when due or Borrower shall fail to pay when due any payment required . . . .", then such default shall constitute an Event of Default.

46. Section 2.5.3 of the Loan Agreement provides, in relevant part, that:

[i]f any Principal, interest or other sum due under any Loan Document is not paid by Borrower on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law . . . in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment. Such amount shall be secured by the Loan Documents.

47. By that notice dated April 7, 2022 (the "Notice of Default"), Plaintiff, through counsel, _inter alia_, notified Borrowers and Guarantor of, _inter alia_, failure to timely pay the Monthly Debt Service Payment Amount on the April 6, 2020 Monthly Payment Date, revoked Borrowers' license to collect the Rents and profits generated by the Mortgaged Premises, and accelerated all sums due and owing under the Loan Documents.

48.     Accordingly, an Event of Default has occurred on April 6, 2020 and is continuing under the Loan Documents as a result of Borrowers' failure to timely pay the Monthly Debt Service Payment Amount on the April 6, 2020 Monthly Payment Date and each Monthly Payment Date thereafter (the "Payment Default").

**ii.     The Cash Management Default**

49.     Pursuant to, <u>inter alia</u>, Section 3.1 of the Loan Agreement, Borrower is obliged to, <u>inter alia</u>:

> cause all Rents to be transmitted directly by non-residential tenants of the Property into an Eligible Account (the 'Clearing Account')" and "if Borrower or Manager receive any Rents, then (i) such amounts shall be deemed to be collateral for the Loan and shall be held in trust for the benefit, and as the property, of Lender, (ii) such amounts shall not be commingled with any other funds or property of Borrower or Manager, and (iii) Borrower or Manager shall deposit such amounts into the Clearing Account within one (1) Business Day of receipt.

(collectively, the "Cash Management Obligations").

50.     Section 8.1(n) of the Loan Agreement provides that an Event of Default shall occur if, <u>inter alia</u>, "a default shall be continuing under any of the other terms, covenants or conditions of this Agreement or any other Loan Document not otherwise specified in this Section 8.1, . . . for thirty (30) days after written notice from Lender in the case of any other default[.]"

51.     By the Notice of Default, Plaintiff, through counsel, notified Borrowers and Guarantor of, <u>inter alia</u>, Borrowers' failure to uphold the Cash Management Obligations.

52.     Accordingly, an Event of Default has occurred on May 7, 2022 and is continuing under the Loan Documents as a result of, <u>inter alia</u>, Borrowers' continued failure to uphold the Cash Management Obligations for thirty days after notice (the "Cash Management Default" and, together with the Payment Default, the "Defaults").

53.     Despite receiving the Notice of Default, neither Borrowers nor Guarantor have cured either of the Defaults.

54.     As a result of the foregoing, there is now due and owing by Borrowers and Guarantor to Plaintiff, pursuant to the Loan Documents, unpaid principal in the amount of $41,000,000.00 plus accrued but unpaid interest at the rates set forth in the Loan Documents, together with any late charges, advances, and Plaintiff's costs and expenses of collection, including, without limitation, Plaintiff's reasonable attorneys' fees and costs.

55.     Accordingly, Plaintiff does hereby elect to demand immediate payment in full of all amounts due and owing under the Loan Documents.

56.     Plaintiff has complied with all the terms and provisions of the Loan Documents.

57.     In order to protect its security, Plaintiff has been and/or may be compelled during the pendency of this action, to make payments for taxes, assessments, insurance, utilities, maintenance, security and/or other charges affecting the Mortgaged Premises, or to protect them, in amounts exceeding any sum now held by Plaintiff for any such purpose.  Any payment made by Plaintiff, together with interest thereon, should be added to the mortgage indebtedness deemed due.  Payment of all such sums is secured by the Mortgage prior to the right of any other defendant herein.

58.     The defendants named herein are obligated to pay the mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the Mortgaged Premises, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the lien of the Mortgage.

59.     Plaintiff has brought no other action or proceeding to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Adjudging and decreeing the amounts due it as demanded in this Complaint by means of Borrowers' default under the Loan Documents;

B.     Adjudging and decreeing that the defendants herein, all persons claiming under them, and all persons making any claim against the Mortgaged Premises, which is the subject of this foreclosure action, subsequent to the filing of the notice of pendency of this action be barred and foreclosed of and from any and all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Mortgaged Premises and each and every part and parcel thereof;

C.     Adjudging and decreeing that (a) the Mortgaged Premises may be decreed or sold, according to law, subject to a statutory right of redemption in the United States of America, if any, subject to taxes, assessments, water charges and sewer rents, subject to any state of facts an accurate, currently dated survey would disclose, subject to zoning ordinances and local regulations, and subject to all mortgages, conditions, restrictions, liens, encumbrances, rights and interests, if any, that may be prior to the liens of the Loan Documents; (b) that the Mortgaged Premises may be sold in one or more parcels and in such order as determined by Plaintiff; (c) that the money resulting from said sale be brought into court; and (d) that Plaintiff be paid (i) the expenses of said sale, (ii) the costs, allowances, and disbursements of this action, (iii) the amounts due on the notes and mortgages, together with interest and late payment charges thereon as provided therein to the time of such payment, (iv) all money advanced or paid by Plaintiff pursuant to any term or provision of any exhibit forming a part of this complaint, or to protect the mortgages or the Mortgaged Premises, (v) its expenses of collection, including reasonable attorneys' fees, and (vi)

all other charges and liens, with interest upon said amounts from the dates of the respective payments or advances all so far as the amount of money property applicable thereto will pay the same;

D.      Adjudging and decreeing that Borrowers be adjudged to pay any deficiency remaining under the Loan Documents after the application of the monies as aforesaid in accordance with Section 1371 of the Real Property Actions and Proceedings Law;

E.      Adjudging and decreeing that Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective;

F.      Adjudging and decreeing that in the event that Plaintiff possesses any other lien(s) against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause of action set forth in this complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money or deficiency proceedings; and

G.      Awarding such other and further relief as the Court may deem just and proper.

## SECOND COUNT
### (Security Interest Foreclosure)

60.      Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

61.      Upon execution of the Mortgage, Borrowers granted to Original Lender, its successors and assigns, a valid and enforceable security interest in, inter alia, the Collateral.

16

62.     Plaintiff possess a duly perfected security interest in the Collateral by virtue of the filed State UCC-1, the County UCC-1, and assignments and continuations thereof, as well as the recorded Mortgage and the assignments thereof.

63.     Pursuant to the terms contained in the Loan Documents, Plaintiff elects to have that Collateral sold by the sheriff together with the Mortgaged Premises at a single public sale.

64.     No person or entity possesses an interest in that Collateral superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Adjudging that the Collateral be sold together with the Mortgaged Premises at a single public sale conducted by the sheriff to satisfy the amounts due to Plaintiff;

B.     Barring and foreclosing the defendants of all equity of redemption in and to the aforesaid personal property;

C.     Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

D.     Awarding such other and further relief as the Court may deem just and proper.

### THIRD COUNT
#### (Possession)

65.     Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

66.     Due to Borrowers' defaults under the terms of the Loan Documents, Plaintiff is entitled to possession of the Mortgaged Premises and the Collateral.

67.     Borrowers are now in possession of the Mortgaged Premises and have deprived, and continue to deprive, Plaintiff of possession of the Mortgaged Premises and the Collateral.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Granting Plaintiff, its assignee or the purchaser of the Mortgaged Premises at the foreclosure sale, possession of the Mortgaged Premises and the Collateral;

B.     Awarding Plaintiff damages for <u>mesne</u> profits;

C.     Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

D.     Awarding such other and further relief as the Court may deem just and proper.

<u>**FOURTH COUNT**</u>
**(Appointment of a Receiver)**

68.     Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

69.     The Leases, the Rents, the books, records, and other property relating to the ownership and operation of the Mortgaged Premises (collectively, the "Borrowers' Assets") are the sole assets of Borrowers.

70.     Except for certain limited qualifications as set forth in the Loan Documents, Borrowers have no personal liability for repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the collateral securing the Loan.

71.     The Loan Documents expressly allow Plaintiff to seek, and indicate Borrowers' express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

72.     Borrowers and their agents are still in possession of Borrowers' Assets.

18

73.     Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrowers' Assets suffering continuous waste and a dissipation or diminution in value, if Borrowers remain in control of Borrowers' Assets.

74.     Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Mortgaged Premises and Borrowers' Assets.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Appointing a receiver of the rent, income and profits of the Mortgaged Premises;

B.     Directing all tenants in possession of the Mortgaged Premises to pay the rent receiver all the rent, income and profits;

C.     Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

D.     Awarding such other and further relief as the Court may deem just and proper.

## <u>FIFTH COUNT</u>
**(Breach of Contract as Against Guarantor)**

75.     Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

76.     In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantor executed, acknowledge and delivered to Original Lender, its successors and assigns, the Guaranty.

#156901258_v9 527548.00059

77.     Pursuant to the Section 2(a) of the Guaranty, Guarantor, <u>inter alia</u>, "irrevocably, absolutely and unconditionally guarantee[d] to Lender the full, prompt and complete payment when due of the Guaranteed Obligations."

78.     Section 1(b) of the Guaranty defines "Guaranteed Obligations" as "(i) Borrower's Recourse Liabilities; (ii) from and after the date that any Springing Recourse Event occurs, payment of all the Debt as and when the same is due in accordance with the Loan Documents (and whether accrued prior to, on or after such date), and (iii) Borrower's obligations contained in Section 5.35 of the Loan Agreement."

79.     Section 10.1(f) of the Loan Agreement provides, in pertinent part, that among Borrower's Recourse Liabilities is the losses, damages, costs, expenses, liabilities claims or other obligations incurred by Plaintiff arising out of or in connection with:

> misappropriation or conversion by or on behalf of Borrower (including failure to turn over to Lender on demand following an Event of Default) of any gross revenues (including Rents, advance deposits, any other deposits, rents collected in advance, funds held by Borrower for the benefit of another party and Lease Termination Payments)[.]

80.     By the terms of the foregoing provisions of the Loan Agreement and Guaranty, Guarantor is liable, in an amount to be determined, for the losses, losses, damages, costs, expenses, liabilities claims or other obligations incurred by Lender arising out of or in connection with Borrower's commission of the Cash Management Default.

81.     Moreover, Guarantor agreed that, with or without notice or demand, Guarantor will reimburse Plaintiff, to the extent that such reimbursement is not made by Borrowers, for all expenses (including reasonable attorneys' fees) incurred by Plaintiff in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of the Guaranty.

82.     Plaintiff is the current holder of the Note, the Mortgage and the Guaranty.

83.     Plaintiff seeks to foreclose upon the Mortgage and recover the full amount of the Debt pursuant to the terms of the Loan Documents, including attorneys' fees and costs, and that Guarantor be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the Debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

84.     Plaintiff has brought no other action or proceeding to recover any part of the Debt herein described.

**WHEREFORE**, Plaintiff demands judgment against Guarantor as follows:

A.     Fixing the amount due to Plaintiff from Guarantor pursuant to the Guaranty and any other applicable Loan Documents;

B.     Adjudging that Plaintiff is entitled to be paid by Guarantor the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs;

C.     Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and,

#156901258_v9 527548.00059

D.      Awarding such other and further relief as the Court may deem just and proper.

Dated: New York, New York
         July 8, 2022

                              **HOLLAND & KNIGHT LLP**


                              By:  _/s/ Keith M. Brandofino_____
                                   Keith M. Brandofino, Esq.
                                   David V. Mignardi, Esq.
                                   Baron C. Giddings, Esq.
                                   Attorneys for Plaintiff
                                        *Wilmington Trust, National Association, As
                                        Trustee, For The Benefit of The Registered
                                        Holders of Wells Fargo Commercial Mortgage
                                        Trust 2018-C44, Commercial Mortgage Pass-
                                        Through Certificates, Series 2018-C44, acting by
                                        and through its special servicer, Rialto Capital
                                        Advisors, LLC, as Special Servicer under the
                                        Pooling and Servicing Agreement dated as of
                                        May 1, 2018*
                                   900 Third Avenue, 20th Floor
                                   New York, New York 10022
                                   Tel: (212) 751-3001
                                   Fax: (212) 751-3113
                                   keith.brandofino@hklaw.com
                                   david.mignardi@hklaw.com
                                   baron.giddings@hklaw.com

22