UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

WILMINGTON TRUST, NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE            22-cv-5855 (JGK)
BENEFIT OF THE REGISTERED HOLDERS
OF WELLS FARGO COMMERCIAL MORTGAGE         MEMORANDUM OPINION
TRUST 2018-C44, COMMERCIAL MORTGAGE        AND ORDER
PASS-THROUGH CERIFICATES, SERIES
20,

                    Plaintiff,

          - against -

31 PRINCE STREET, LLC, ET AL.,

                    Defendants.

———————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, Wilmington Trust, brought this action

against the defendants, 31 Prince Street, LLC, Wah Kok Realty

Corp. (together, the "Borrowers"), and Edmond Li (together, the

"Defendants"), the New York City Department of Finance, the New

York City Office of Administrative Trials and Hearings, and any

unknown tenants, occupants, persons, or corporations having or

claiming an interest in the premises at issue in the litigation,

in order to foreclose upon a mortgage for a principal amount of

$41,000,000 that is secured by certain of the Borrowers'

properties.

     The plaintiff has moved for the appointment of a receiver

pursuant to Federal Rule of Civil Procedure 66 to manage the

Borrowers' properties during the pendency of this litigation.

For the following reasons, the plaintiff's motion to appoint a receiver is **granted**.

**I.**

Unless otherwise noted, the facts relevant to this motion are undisputed and are taken from the declarations submitted by the parties in relation to the current motion. The plaintiff, Wilmington Trust, is the trustee for the Wells Fargo Commercial Mortgage Trust 2018-C44. Gauer Decl., ECF No. 22, ¶ 2.

On March 14, 2018, the Borrowers, among the Defendants at issue in this motion, obtained a nonrecourse[1] loan for $41,000,000.00 (the "Loan") from Argentic Real Estate Finance LLC ("Argentic"). Id. ¶ 5. The Loan was made pursuant to a Loan Agreement, ECF No. 22-1, and the Borrowers executed a promissory note for the Loan (the "Note"), ECF No. 22-2. As collateral for the Loan, the Borrowers executed a mortgage (the "Mortgage"), ECF No. 22-3, granting Argentic a security interest in three of their properties: (i) 31 Prince Street, (ii) 46 Prince Street, and (iii) 48 Spring Street (the "Properties"). Gauer Decl. ¶ 8. As additional security for the Loan, the Borrowers also executed "an Assignment of Leases and Rents" granting Argentic "a security interest in all Leases and Rents" generated from the Properties. Id. at ¶ 9; ECF No. 22-4.

---

[1] At oral argument, counsel for both parties referred to the Loan as being nonrecourse.

The plaintiff represents that "by virtue of . . . a series of alonges to the Note, assignments of the Mortgage, and assignments of the [Assignment of Leases and Rents], [Wilmington Trust] acquired all of right, title and interest in and to the Note, the Mortgage, the [Assignment of Leases and Rents] and all related loan documents . . . Accordingly, [Wilmington Trust] is the current owner and holder of the Loan and the Loan Documents." Gauer Decl. ¶ 11; see also ECF Nos. 22-6, 22-7, 22-8, 22-9, 22-10, 22-11.

The Mortgage "absolutely and unconditionally assign[s] to [Wilmington Trust] all of [the Borrowers'] right, title, and interest in all current and future Leases and Rents." Gauer Decl. ¶ 12; ECF No. 22-3, § 2(a). The Mortgage also provides for "the grant of a license to Borrowers to collect the Rents . . . and Borrowers' obligation to hold in trust sufficient Rents and other amounts to pay sums due under the Loan Documents." Gauer Decl. ¶ 12.

The Loan Agreement provides that an "Event of Default" will occur if "any portion of the Debt is not paid when due or Borrower shall fail to pay when due any payment required," and if "a default shall be continuing under any of the other terms, covenants or conditions of this Agreement or any other Loan Document not otherwise specified in this Section 8.1." Id. ¶ 13-14; ECF No. 22-1, § 8.1(a), (n). The Mortgage provides that,

3

given an Event of Default, "Borrowers agree[] that Lender may . . . declare the entire unpaid Debt to be immediately due and payable." Gauer Decl. ¶ 15. The Mortgage provides that "[u]pon the occurrence of any Event of Default," the mortgage holder may "apply for the appointment of a . . . receiver . . . of the Mortgaged Property." Id. ¶ 17; ECF No. 22-3, § 10(a)(vii).

The plaintiff alleges that the Borrowers have defaulted on the Loan by failing to pay the monthly amount due on the principal of the Loan and by failing to turn over the rents and profits generated by the Properties. See Gauer Decl. ¶ 18. The plaintiffs also allege that the Borrowers have failed to pay the property taxes associated with the Properties, resulting in unpaid taxes in a total amount of over $1.3 million. The plaintiff has "advance[d] over $1,300,000.00" to pay these unpaid taxes "in order to avoid the levy of tax liens against the [Properties]." Id. ¶ 23.

The Borrowers have not disputed that they have failed to pay the amounts due on the principal of the Loan. The Borrowers dispute that they have "failed to turn over all rents generated by the" Properties, and represent that "[f]rom January to June 2022, the rents generated by the Properties were deposited into Wilmington's account, which showed a balance, as of the end of September 2022, of $1,672,131.30." Li Decl., ECF No. 34, ¶ 31-32. However, beginning in July 2022, "[Borrowers] were unable to

4

forward rents to the [plaintiff's account]" due to decreased
cash flow, but "expect to begin forwarding rents to Wilmington's
account shortly." Id. ¶ 33.

The plaintiff contends that it will be "threatened with
material losses and injuries, including [the Properties]
suffering waste and a dissipation or diminution in value if a
receiver is not appointed and Borrower remains in control of
them," and seeks to appoint Richard J. Madison, of Colliers
International, as the receiver of the Properties. Compl. ¶ 73,
ECF No. 1.

## II.

"Whether a federal court should appoint a receiver in a
diversity action is governed by federal law." U.S. Bank Nat'l
Ass'n v. Nesbitt Bellevue Prop. LLC, 866 F. Supp. 2d 247, 249
(S.D.N.Y. 2012).[2] "The appointment of a receiver is considered to
be an extraordinary remedy, and should be employed cautiously
and granted only when clearly necessary to protect plaintiff's
interests in the property." Id.; Rosen v. Siegel, 106 F.3d 28,
34 (2d Cir. 1997). "The following factors are relevant to
establishing the need for a receivership:

> Fraudulent conduct on the part of the defendant; the imminent
> danger of the property being lost, concealed, injured,
> diminished in value, or squandered; the inadequacy of the

---

[2] Unless otherwise noted, this Memorandum Opinion and Order
omits all internal alterations, citations, footnotes, and
quotation marks in quoted text.

available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to [the plaintiff's] interest in the property."

U.S. Bank Nat'l Ass'n, 866 F. Supp. 2d at 249-50.

Although not dispositive, "the existence of a provision authorizing the application for a receiver in the event of a default[] strongly supports the appointment of a receiver when there is a default." Id. at 250. However, such an appointment "is not automatic under the mortgage agreement and still requires an adequate showing by the plaintiff." See id. (considering a similar clause to the provision in this case and concluding that, given such a clause, "the burden remains on the plaintiff" to show adequately that a receiver is necessary). Although Wilmington Trust argues that "Borrowers have previously consented to [the appointment of a receiver] should they default on the Loan," Pl.'s Memo., ECF No. 24, at 3, the provision in this case does not indicate consent, only authorization. See U.S. Bank Nat'l Ass'n, 866 F. Supp. 2d at 250 (finding that a similar clause did not amount to express consent). Accordingly, Wilmington Trust still bears the burden of showing that appointment of a receiver is necessary.

As an initial matter, the parties do not dispute that the Borrowers have defaulted on some of their obligations under the

loan documents. In addition, the plaintiff does not argue that the Borrowers engaged in any fraudulent conduct. However, receivers have been appointed "even where there was no evidence of fraud," and where a plaintiff has not alleged any fraudulent conduct on the part of the defendant. D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Ltd., 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008).

First, the parties dispute whether the Properties are in imminent danger of suffering waste and diminution in value. The plaintiff claims that the Borrowers have failed to pay the monthly principal amount due on the Loan and to turn over all rent generated on the Properties to the plaintiff, "thereby flouting [Wilmington Trust's] entitlement to control and management of the [Properties]." Pl.'s Reply, ECF No. 39, at 4.

The defendants argue that these allegations indicate only that the Borrowers have defaulted on their obligations to the plaintiff, but not that the Properties themselves are in danger of suffering waste or diminution in value. The defendants argue that, without more, the plaintiff's claimed loss of control and management over the Properties does not suggest that the Properties are themselves in danger of losing value. See Citibank, N.A. v. Nyland (CF8) Ltd., 839 F.2d 93, 97 (2d Cir. 1988) (finding that "having two entities speaking for [a rental property]" would result in "confusion . . . likely to harm [the

7

rental property's] marketability, and, consequently, reduce its value"); U.S. Bank Nat'l Ass'n, 866 F. Supp. 2d at 252-53 (noting that hotels were in danger of losing value due to potential "loss of the Embassy Suites franchise license").

On the other hand, the plaintiff also rightly points out that the defendants have consistently failed to pay the property taxes due on the Properties. Because of the defendants' failure to pay the required taxes, the plaintiff has had to advance over $1.3 million dollars to pay the unpaid taxes, lest the plaintiff risk a tax lien being levied against the Properties. A tax lien on the Properties certainly could result in a diminution in value of the Properties and, in the most extreme case, seizure of the Properties. Accordingly, there is a significant danger of the Properties being "lost, concealed, injured, diminished in value, or squandered," id., 866 F. Supp. 2d at 249-50, because of the Borrowers' failure to pay the necessary taxes.[3]

The Borrowers claim that the Properties will not suffer waste or diminish in value without a receiver, and represent that "in December 2017, the combined value of the Properties exceeded the loan amount by $25 million." Defs.' Opp., ECF No.

---

[3] The Borrowers declare that they "have not failed to pay the real estate taxes on the Properties, as the real estate tax bills . . . show a ZERO balance for the Properties." Li Decl. ¶ 53. However, the tax balance is only zero because the plaintiff has been covering the Borrowers' tax obligations. The plaintiff should not need to continue doing so.

35, at 4. At oral argument, the Borrowers also claimed that the value of the Properties is enough to give the plaintiff sufficient security for the Loan. However, this fails to account for the current state of the real estate market including, according to defendant Li, the fact that his various real estate holdings "have immensely suffered as a result of the government-mandated lockdowns and severe adverse economic conditions." Li Decl. ¶ 46. Moreover, if the value of the Properties covered the Loan, it should have been possible for the Borrowers to cure their default, either by resolving the issue privately with the plaintiff or by refinancing the Properties in order to pay off the balance of the Loan. But nothing in the papers suggests that the Borrowers have attempted to cure the prior defaults, and the Borrowers have continued to default on the Loan. The Borrowers also fail to address the significant property tax arrearage that accrued which the plaintiff has covered until this point, and which presents the Properties with a significant danger of loss or waste.

Second, the plaintiff's only available legal remedy in this case is to foreclose on the Properties. The Loan is nonrecourse; consequently, the Properties and the rents collected on them are the sole collateral for the Loan and the only assets on which the plaintiff may recover given the Borrowers' default. While the defendants point to a personal guarantee by defendant Li,

there is no evidence proffered that the guarantee would cover the value of the Loan. In light of this, appointing a receiver to preserve the value of the Properties would help to guarantee plaintiff's recovery of the Loan. Moreover, in the current action, the plaintiff has pursued its only available remedy by seeking to foreclose on the Properties. Appointing a receiver during this litigation would therefore "protect a party's interest in property pending resolution of a dispute over ownership or control between it and another party with a claim to the property." Cf. Varsames v. Palazzolo, 96 F. Supp. 2d 361, 366 (S.D.N.Y. 2000).

Third, the plaintiff has shown a high likelihood of success on the merits of its underlying foreclosure action. The parties do not dispute that the Borrowers have defaulted on their obligations to the plaintiff under the Loan, and therefore the plaintiff is entitled to foreclose on the Properties under the terms of the Mortgage. The only dispute regards the extent of the Borrowers' default, for example, whether the Borrowers failed to turn over all the rents generated on the Properties as opposed to only some of those rents. However, any dispute regarding the scope of the Borrowers' default is ultimately immaterial to the disposition of the plaintiff's underlying foreclosure action.

"[T]he dispositive issue is whether the appointment of a receiver is clearly necessary to protect plaintiff's interests in the property." U.S. Bank Nat'l Ass'n, 866 F. Supp. 2d at 253. The Borrowers have flouted their obligations to the plaintiff. As a result, the plaintiff's interest in the Properties is in danger of suffering irreparable harm if a receiver is not appointed to manage the Properties during the pendency of this litigation. See Nyland, 839 F.2d at 97 ("It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default."); Sovereign Bank v. 347 East 173 LLC, No. 11-cv-1061, 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011) (appointing a receiver where the plaintiff offered evidence that "(1) the Borrowers receive[d] substantial rents from the properties, yet they have not made payments owed under the Mortgage since February 2010; (2) the Borrowers have failed to pay real estate taxes for the Mortgaged Premises; and (3) the Borrowers have allowed at least one building to fall into serious disrepair").

Alternatively, the Borrowers challenge the plaintiff's standing to bring this action, claiming that the plaintiff does not hold the original Note and Mortgage. However, the plaintiff has produced documents demonstrating the assignment of the Note

11

and Mortgage to the plaintiff. <u>See</u> Gauer Decl., Exs. 6-11, ECF
Nos. 22-6, 22-7, 22-8, 22-9, 22-10, 22-11. Accordingly, there is
no issue regarding the plaintiff's standing to bring this action
because the plaintiff has produced documentation showing that it
holds both the Note and the Mortgage.

The Borrowers also contend that appointing a receiver would
incur annual costs of $460,000, an "enormous expense that [the
Borrowers] cannot afford and should not have to pay in the first
instance." Defs.' Opp. at 2. However, the receiver's fee
schedule entitles the receiver to a $1,000 monthly fee in
addition to a property management fee of 3% of gross receipts.
Mignardi Decl., Ex. C, ECF No. 23-3, at 21. This calculates to
an annual cost of $180,000.00, an amount far lower than what the
Borrowers have represented. Pl.'s Reply at 8. Accordingly, the
cost of appointing a receiver would not be unduly burdensome on
the Borrowers.

Finally, the Borrowers claim that "[f]rom January to June
2022, the rents generated by the Properties were deposited into
Wilmington [Trust]'s account, which showed a balance, as of the
end of September 2022, of $1,672,131.30." Li Decl. ¶ 31. But, by
the Borrowers' own admission, this amount does not constitute
the entirety of the rents generated by the Properties for that
period. The Borrowers attest that "[t]he total monthly rent
rolls of the Properties is $464,894." <u>Id.</u> ¶ 26. Over six months,

based on this calculation, the Properties should have generated $2,789,364 in rents, of which only $1,672,131.30 has been deposited into the plaintiff's control. The Borrowers' contention that they have partially complied with their obligations under the Loan is not a compelling reason to deny the appointment of a receiver in this case. Moreover, since July 2022, the Borrowers have failed to deposit any rents into the lockbox account, claiming that "the funds were needed for necessary renovations to, and escalating ongoing operating expenses of[,] the Properties." Id. ¶ 33. But it is not within the Borrowers' discretion to determine how the rents generated by the Properties should be spent, and their failure to turn over those rents to the plaintiff, as required by the Loan, supports the appointment of a receiver in this case.

Finally, the Borrowers have recently objected to the appointment of Richard J. Madison as a receiver because of a dispute with Mr. Madison in another case. ECF No. 63 at 2. However, that dispute is insufficient to undermine the credentials of Mr. Madison to be a receiver in this case. See ECF 23-2.

## CONCLUSION

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the

13

plaintiff's motion to appoint Richard J. Madison as receiver is **granted**. The Clerk is directed to close Docket No. 21.

SO ORDERED.

Dated:      New York, New York
            January 25, 2023

                                          John G. Koeltl
                                 United States District Judge