UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2018-C44, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-C44, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of May 1, 2018,<br><br>                              Plaintiff,<br><br>            v.<br><br>31 PRINCE STREET, LLC; WAH KOK REALTY CORP.; EDMOND LI; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS; and "JOHN DOE NO. 1" to "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>                              Defendants. | Case No. 22-cv-05855-JGK-BCM<br><br>**DECLARATION OF AMOUNT DUE** |

Pursuant to 28 U.S.C. § 1746, I, **JOAO GAUER**, declare under penalty of perjury as follows:

1.      My name is Joao Gauer. I am over 21 years of age and am competent to give testimony.

2.      The plaintiff in this lawsuit is Wilmington Trust, National Association, As Trustee For The Benefit of The Registered Holders of Wells Fargo Commercial Mortgage Trust 2018-C44, Commercial Mortgage Pass-Through Certificates, Series 2018-C44 ("Plaintiff"), acting by and through its special servicer, Rialto Capital Advisors, LLC ("Special Servicer"), as Special

#226737266_v2 527548.00059

Servicer under the Pooling and Servicing Agreement dated as of May 1, 2018 (the "PSA"). True and correct excerpts of pertinent provisions of the PSA are collectively annexed hereto as **Exhibit 1**. I currently serve as an Asset Manager with Special Servicer and am authorized to make this declaration on behalf of Plaintiff.

3. In my capacity as an Asset Manager at Special Servicer for the subject loan, I am and have been responsible for recovering the debt that defendants 31 Prince Street, LLC and Wah Kok Realty Corp. (collectively, "Borrowers") owe pursuant to the subject loan documents at issue in this lawsuit. The facts herein are based upon my personal knowledge and my review of Plaintiff's business records, as maintained by Special Servicer, regarding Borrowers. In connection with performing its duties as special servicer pursuant to the PSA, Special Servicer creates, receives, and maintains records, including the exhibits attached to the complaint and/or this declaration, in the regular course of the Special Servicer's business activities on behalf of Plaintiff. I am familiar with Special Servicer's record-keeping practices and procedures. Based on my review of and familiarity with Plaintiff's records, created and maintained by Special Servicer, all of the exhibits attached to the complaint and/or this affidavit were received, created, or otherwise generated at or near the dates reflected on such documents. Such exhibits also are true and correct copies of the corresponding documents in Special Servicer's business records that are in the custody and control of Special Servicer.

## FACTUAL BACKGROUND

<u>The Loan Documents:</u>

4. Pursuant to that certain Loan Agreement dated March 14, 2018 (the "Loan Agreement") executed by and between Borrowers and Argentic Real Estate Finance LLC ("Original Lender"), Original Lender made a loan to Borrowers in the original principal amount

of $41,000,000.00 (the "Loan"). A true and correct copy of the Loan Agreement is annexed hereto as **Exhibit 2**.

5. To evidence its indebtedness under the Loan Agreement, on or about March 13, 2018, Borrowers executed and delivered to Original Lender that certain Amended, Restated and Consolidated Promissory Note dated March 13, 2018 and in the original principal amount of $41,000,000.00 (the "Note"), a true and correct copy of which is annexed hereto as **Exhibit 3**.

6. To secure the payment of the Note, Borrowers executed, acknowledged and delivered to Original Lender that certain Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement dated as of March 13, 2018 (the "Mortgage"), which Mortgage Original Lender recorded against certain real property and improvements located at (i) 31 Prince Street a/k/a 242-244 Mott Street, New York, New York 10012 and designated as Block 508, Lot 53 as shown on the Tax Map of the City of New York, County of New York ("31 Prince St."), (ii) 46 Prince Street a/k/a 250 Mulberry Street, New York, New York 10012 and designated as Block 494, Lot 14 as shown on the Tax Map of the City of New York, County of New York ("46 Prince St."), and (iii) 48 Spring Street a/k/a 207-211 Mulberry Street, New York, New York 10012 and designated as Block 481, Lot 22 as shown on the Tax Map of the City of New York, County of New York ("48 Spring St."), and more particularly described in Exhibit 1 annexed to the Complaint (collectively, the "Property"). On March 22, 2018, Original Lender duly recorded the Mortgage with the Office of the City Register of the City of New York (the "City Register's Office") as City Register File No. ("CRFN") 2018000097778, and duly paid the mortgage recording taxes. A true and correct copy of the Mortgage is annexed hereto as **Exhibit 4**.

7. By that certain Note Splitter and Loan Agreement Modification Agreement, dated April 24, 2018 (the "Note Splitter Agreement"), Borrowers and SPREF WH II LLC, Plaintiff's predecessor-in-interest with respect to the Loan, agreed to split and sever the Note into two (2) separate and distinct notes as follow: (i) that certain Promissory Note A-1 in the amount of $30,000,000 (the "A-1 Note"); and (ii) that certain Promissory Note A-2 in the amount of $11,000,000.00 (the "A-2 Note"). A copy of the Note Splitter Agreement is annexed hereto as **Exhibit 5**.

8. The Loan Agreement, the Note, the A-1 Note, the A-2 Note, the Mortgage, the Note Splitter Agreement and all related loan documents shall be referred to collectively herein as the "Loan Documents."[1]

9. Section 2.2.1 of the Loan Agreement provides, in relevant part, that "[o]n May 6, 2018 and each Payment Date thereafter for the remainder of the Term, Borrower shall pay the interest on the unpaid Principal accrued at the Interest Rate during the Interest Period immediately preceding such Payment Date . . . ." See Ex. 3.

10. Section 8.1(a) of the Loan Agreement provides, in relevant part, that "if any portion of the Debt is not paid when due or Borrower shall fail to pay when due any payment required . . . .", then such default shall constitutes an Event of Default. Id.

11. Borrowers failed to timely pay the Monthly Debt Service Payment Amount on the April 6, 2020 Monthly Payment Date and each Monthly Payment Date thereafter, until when Borrowers failed to altogether make any requisite Monthly Debt Service Payment Amount on the October 6, 2020 Monthly Payment Date and each Monthly Payment Date thereafter.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed in the Loan Documents.

12. By notice dated April 7, 2022 (the "Notice of Default and Acceleration"), Plaintiff, through Special Servicer, notified Borrowers and Guarantor of, inter alia, Borrowers' failure to remit to timely pay the Monthly Debt Service Payment Amount on the April 6, 2020 Monthly Payment Date, and each Monthly Payment Date occurring monthly thereafter, revoked Borrowers' license to collect the Rents and profits generated by the Mortgaged Premises, and accelerated all sums due and owing under the Loan Documents. A true and correct copy of the Notice of Default and Acceleration is annexed hereto as **Exhibit 6**.

13. Accordingly, an Event of Default has occurred and is continuing since April 6, 2020 under the Loan Documents as a result of, inter alia, Borrowers' failure to comply with Section 2.2.1 of the Loan Agreement (the "Payment Default").

## COMPUTATION OF THE AMOUNT DUE AND OWING

14. I have examined or caused to be examined the records of Plaintiff concerning the Loan Documents, and I find from those records that there is due and owing to Noteholder under the Loan the amount of **$60,610,184.42**, as of August 6, 2023 (exclusive of unpaid legal fees and costs), as fully set forth on the Amount Due Schedule annexed hereto as Schedule A. Among the documents annexed hereto is Special Servicer's Payoff Reconciliation, a business record upon which I relied in attesting to the amount due and owing on the Loan. A true and correct copy of the Payoff Reconciliation is annexed hereto as **Exhibit 7**, broken down as follows:

   a. The Consolidated Summary Tab is annexed hereto as **Exhibit 7-A**;

   b. The A-1 Note Summary Tab is annexed hereto as **Exhibit 7-B**;

   c. The A-2 Note Summary Tab is annexed hereto as **Exhibit 7-C**;

   d. The A-1 Amort., DI, SS, YM Tab is annexed hereto as **Exhibit 7-D**;

   e. The A-2 Amort., DI, SS, YM Tab is annexed hereto as **Exhibit 7-E**;

#226737266_v2 527548.00059

   f. The A-1 Loan Transaction History Tab is annexed hereto as **Exhibit 7-F**;

   g. The A-2 Loan Transaction History Tab is annexed hereto as **Exhibit 7-G**;

   h. The Appian Invoices Tab is annexed hereto as **Exhibit 7-H**;

   i. The A-1 SS Fees Tab is annexed hereto as **Exhibit 7-I**; and

   j. The A-2 SS Fees Tab is annexed hereto as **Exhibit 7-J**;

   k. The A-1 IOAs Tab is annexed hereto as **Exhibit 7-K**;

   l. The A-2 IOAs Tab is annexed hereto as **Exhibit 7-L**;

   m. The A-1 Defeasance Tab is annexed hereto as **Exhibit 7-M**; and

   n. The A-2 Defeasance Tab is annexed hereto as **Exhibit 7-N**.

Unpaid Principal Balance:

   15. Plaintiff's proposed damages computation, as reflected on the Amount Due Schedule annexed hereto as Schedule A, includes the $41,000,000.00 unpaid principal balance of the Loan. Each of the payments that Borrowers have remitted towards the Loan are reflected on the Transaction History Tabs of the Payoff Reconciliation. See Ex. 7-F, 7-G.

   16. However, the Loan's principal balance has remain fixed at $41,000,000.00 because the Loan is interest-only in nature. See Ex. 2 § 2.2.1 ("On May 6, 2018 and each Payment Date thereafter for the remainder of the Term, Borrower shall pay the interest on the unpaid Principal accrued at the Interest Rate . . . .") .

Accumulated Interest:

   17. Pursuant to Section 2.5.2 of the Loan Agreement, "[i]nterest payable under the Loan Documents shall be computed on the basis of the actual number of days elapsed over a 360-day year." Id.

18. Section 2.2.1 and the Definitions Section of the Loan Agreement provide that interest on the outstanding principal balance of the Loan shall accrue for the Term of the Loan at the Interest Rate of 5.34% (the "Non-Default Rate"). Id.

19. While the Payment Default occurred on April 6, 2020, Plaintiff has recovered monies from the Property to cover interest through May 6, 2021. As such, the Amount Due Schedule attached hereto as Schedule A reflects that $4,999,130.00 of unpaid interest has accumulated with respect to the Loan's $41,000.000,00 unpaid principal balance, at the Non-Default Rate over the course of 822 days spanning commencing May 6, 2021 through and including August 6, 2023 on a 360-day year basis.[2]

20. The foregoing is further reflected on the Amort., DI, SS, YM Tabs of the Payoff Reconciliation as it is the sum of amounts identified on both of the Interest Column from 5/6/2021 through 8/6/2023. See Ex. 7-D, 7-E.

Accumulated Default Interest:

21. Pursuant to Section 2.2.2 of the Loan Agreement, "[a]fter the occurrence and during the continuance of an Event of Default, the entire unpaid Debt shall bear interest at the Default Rate . . . ." See Ex. 2.

22. The Definitions Section of the Loan Agreement defines the "Default Rate" as a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law, or (ii) five percent (5%) above the Non-Default Rate. Id. In turn, default interest accrues at the Default Rate each month not only with respect to the unpaid principal balance but with respect to all accumulated and unpaid interest (the "Running Balance").

---

[2] $4,999,130.00 = [($41,000,000.00 * 0.0534)/360] * 822.

#226737266_v2 527548.00059

23. Accordingly, and because of Borrower's commission of the Payment Default on April 6, 2020, the attached Amount Due Schedule reflects that $7,961,075.62 of unpaid default interest has accumulated with respect to the Running Balance, at the Default Rate of 5% through March 5, 2023.

24. Of the combined $7,961,075.02 of accumulated default interest, $5,825,177.28 accrued on the A-1 Note while $2,135,898.34 accrued on the A-2 Note. See Ex. 7-B, 7-C. These amounts are reflected as the respective last entries on the Default Interest Columns on the Amort., DI, SS, YI Tabs of the Payoff Reconciliation. See Ex. 7-D, 7-E.

Late Payment Charges:

25. Pursuant to Section 2.5.3 of the Loan Agreement, Borrower is obliged to pay Plaintiff an amount equal to 5% of any unpaid principal, interest or any other sums due under the Loan Documents (the "Late Payment Charge"). See Ex. 2.

26. Borrower failed to remit the Monthly Debt Service Payment Amount due on each month commencing on April 6, 2020 through April 6, 2022, the date prior to which Plaintiff accelerated the Loan. See Ex. 6.

27. Accordingly, the Amount Due Schedule hereto reflects that Borrower has incurred a total of $368,219.54 in accumulated Late Payment Charges, which is reflects the twenty-four (25) charges assessed for the Monthly Debt Service Payments Borrowers failed to remit for twenty-five (25) months spanning April 2020 through and including April 2022. Of the $368,219.54 total Late Payment Charges, Borrowers incurred $306,134.68 of such Late Payment Charges on the A-1 Note and an additional $62,084.86 on the A-2 Note. See Ex. 7-B, 7-C. A breakdown of the aforementioned Payment Charges, assessed for the months April 6, 2020 through

8

and including April 6, 2022, are each reflected on the respective Loan Transaction History Tabs of the Payoff Reconciliations.[3] See Ex. 7-F,[4] 7-G.

Fees, Expenses and Advances Incurred by Plaintiff:

28.  Section 8.2.5 of the Loan Agreement provides that

> [i]f Borrower fails to perform any covenant or obligation contained herein . . . Lender may, but shall have no obligation to, perform, or cause performance of, such covenant or obligation, and all reasonable costs, expenses, liabilities, penalties and fines of Lender incurred or paid in connection therewith **shall be payable by Borrower to Lender upon demand and if not paid shall be added to the Debt (and to the extent permitted under applicable laws, secured by the Mortgage and other Loan Documents) and shall bear interest thereafter at the Default Rate**. Notwithstanding the foregoing. Lender shall have no obligation to send notice to Borrower of any such failure.

See Ex. 2 (emphasis added).

29.  Section 5.29(a)(vii) of the Loan Agreement further provides that

> Borrower shall pay or, if Borrower fails to pay, reimburse Lender upon receipt of notice from Lender for all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender or Servicer in connection with the Loan, including . . . the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, the Loan Documents, the Property, or any other security given for the Loan;

Id.

30.  Similarly, Section 9 of the Mortgage provides that:

---

[3] Both Loan Transaction History Tabs reflect the assessment of Late Payment Charges after April 6, 2022. However, because Plaintiff accelerated the Loan on April 7, 2022 (see Ex. 6), Plaintiff does not seek recovery of those latter assessed late payment charges.

[4] The A-1 Loan Transaction History also reflects one late payment charge waiver on October 22, 2020. See Ex. 7-F.

#226737266_v2 527548.00059

>[u]pon the occurrence of any Event of Default, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor (unless required by applicable law) and without releasing Mortgagor from any obligation hereunder, perform the obligations in Default in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to . . . bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the reasonable cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), **with interest thereon at the Default Rate for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee, shall constitute a portion of the Debt**, shall be secured by this Mortgage and the other Loan Documents and shall be due and payable to Mortgagee upon demand.

See Ex. 4 (emphasis added).

31. So as to protect its security interest in the Property, Special Servicer, by and on behalf of Plaintiff, has advanced: (i) $2,356,152.56 for the payment of taxes for the Property; (ii) $287,384.79 for the payment of other property protective advances; (iii) a $50 NSF Fee; (iv) a $157.72 UCC Filing Fee; and (v) a $950.00 Payoff Fee (all as reflected on Schedule A hereto). In accordance with the aforementioned provisions of the Loan Documents, $589,793.81 of interest has accrued on the aforementioned and other advances (as further reflected on Schedule A hereto).

32. These amounts are also reflected on the Payoff Reconciliation:

    a. The $2,356,152.56 of tax advances amount is reflected on the A-1 Loan Transaction History Tab of the Payoff Reconciliation as it is the sum of the amounts identified on the Tax Amount Column (see Ex. 7-F);

    b. The other Protective Property Advances are reflected on the Appian Invoices Tab of the Payoff Reconciliation as it is the sum of those amounts in the "Invoice

Amounts" Column that are "Recoverable Advances" as identified on the "Source of Payment" column, the total of which equates to $287,384.79[5] (see Ex. 7-H); and

      c.     Detailed breakdowns of the respective interest on advances for both the A-1 Note and A-2 Note are also reflected on the IOAs Tabs of the Payoff Reconciliation (see Ex. 7-K, 7-L).

Special Servicer Fees:

33.    Pursuant to Section 9.1(a)(iii) of the Loan Agreement, Plaintiff was empowered with the right "to securitize the Loan or any portion thereof in a single asset securitization or a pooled loan securitization." See Ex. 2.

34.    Section 10.3 of the Loan Agreement provides that:

> Lender reserves the right to retain Servicer to act as its agent hereunder with such powers as are specifically delegated to Servicer by Lender, whether pursuant to the terms of this Agreement, any Pooling and Servicing Agreement, the Cash Management Agreement or otherwise, together with such other powers as are reasonably incidental thereto. Borrower shall pay any reasonable fees and expenses of Servicer . . . in connection with the enforcement of the Loan Documents . . . .

Id.

35.    Pursuant to Article I and Section 3.11 of the PSA, Plaintiff must pay Special Servicer a Special Servicing Fee payable in accordance with the Special Servicing Fee Rate. See Ex. 1.

36.    Pursuant to Article I of the PSA, Special Servicing Fee are assessed for each day at a rate equal to the unpaid principal balance of the subject loan multiplied by the 0.25% Special

---

[5] Factored out of this computation are any protective advances, while Recoverable, for which the Milestone reflects "Request Cancelled."

#226737266_v2 527548.00059

Servicing Fee Rate and then determined using the same interest accrual methodology that is applied with respect to the interest rate for the subject mortgage loan. Id.

37. Here, Special Servicing Fees are assessed on the A-1 Note at $208.33 per diem, a product of the A-1 Note's $30,000,000 principal balance multiplied by the 0.025 Special Servicing Rate and then divided by 360 (the same 360 day/year basis used to compute interest for the Loan). See Ex. 7-I. The A-1 SS Fee Tab of the Payoff Reconciliation reflects special servicing fees, as having been assessed during December 2020 and continuing through and including July 2023, to be due and owing. Id. The special servicing fees reflected on each month are a product of the $208.33 per diem rate multiplied by the number of days in the previous month that elapsed.[6]

38. With respect to the A-2 Note, Special Servicing Fees are assessed on the A-1 Note at $76.39 per diem, a product of the A-2 Note's $11,000,000 principal balance multiplied by the 0.025 Special Servicing Rate and then divided by 360 (the same 360 day/year basis used to compute interest for the Loan). See Ex. 7-J. The A-2 SS Fee Tab of the Payoff Reconciliation reflects special servicing fees, as having been assessed during December 2020 and continuing through and including July 2023, to be due and owing. Id. The special servicing fees reflected on each month are a product of the $76.39 per diem rate multiplied by the number of days in the previous month that elapsed.[7]

---

[6] For instance, in February 2021, $6,458.33 of special servicing fees were assessed reflecting $208.33 multiplied by 31, the number of days in the previous January 2021 month. See Ex. 7-I.

[7] For instance, in February 2021, $6,458.33 of special servicing fees were assessed reflecting $76.39 multiplied by 31, the number of days in the previous January 2021 month. See Ex. 7-J.

#226737266_v2 527548.00059

Yield Maintenance Premium:

39. Pursuant to Section 2.3.1 of the Loan Agreement, "[i]f prior to the Stated Maturity Date the Debt is accelerated by reason of an Event of Default, then Lender shall be entitled to receive, in addition to the unpaid Principal and accrued interest and other sums due under the Loan Documents, an amount equal to the Yield Maintenance Premium applicable to such Principal so accelerated." See Ex. 2.

40. Section 1.1 of the Loan Agreement defines Yield Maintenance Premium as:

> an amount equal to the greater of (i) five percent (5%) of any applicable prepayment, or (ii) an amount which, when added to the outstanding Principal, would be sufficient to purchase U.S. Obligations which provide payments (a) on or prior to, but as close as possible to, all successive scheduled payment dates under this Agreement through the Stated Maturity Date and (b) in amounts equal to the Monthly Debt Service Payment Amount required under this Agreement through the Stated Maturity Date together with the outstanding principal balance of the Note as of the Stated Maturity Date assuming all such Monthly Debt Service Payment Amounts are made (including any servicing costs associated therewith). In no event shall the Yield Maintenance Premium be less than zero.

Id.

41. Here, the collective Yield Maintenance Premium for the Loan equals $2,314,614.00, which is the sum of the $1,707,214.00 premium for the A-1 Note and the $607,427.00 premium for the A-2 Note. See Ex. 7-A, 7-B, 7-C.

42. The Defeasance Calculation Tabs of the Payoff Reconciliation reflects Plaintiff's performance of the required calculations of the two possible scenarios for the Yield Maintenance Premium as set forth in Section 1.1 of the Loan Agreement. See Ex. 1; see also Ex. 7-M, 7-N. The "YM Calculation A" reflected thereon reveals a sum greater than the "YM Calculation B" reflected thereon, the latter of which is merely 5% of the unpaid principal balance of the Notes. Id. As such, and choosing the greater amount, as Section 1.1 of the Loan Agreement instructs, the Yield

#226737266_v2 527548.00059

Maintenance Premium for the A-1 Note equals $1,707,214.00 while the Yield Maintenance Premium for the A-2 Note equals $607,427.00. See Ex. 7-M, 7-N.

Liquidation Fee:

43. Pursuant to Section 5.29(a)(viii) of the Loan Agreement, Borrower is obliged to reimburse Plaintiff "for all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender or Servicer in connection with the Loan, including . . . reasonable fees charged by Servicer." See Ex. 2.

44. Borrower recognized Lender's ability to securitize the Loan and appoint a Servicer to service it (as set forth above), Section 3.11 of the PSA defines compensation Special Servicer is entitled to recover from Plaintiff. See Ex. 1. Among other compensation, Section 3.11(c) provides that "[a] Liquidation Fee will be payable with respect to (a) each Specially Serviced Loan . . . as to which the Special Servicer receives any Liquidation Proceeds . . ." Id.

45. The Liquidation Fee is computed pursuant to the "Liquidation Fee Rate", which Article I of the PSA defines as "(a) 1.00% or (b) if such rate set forth in clause (a) above would result in an aggregate Liquidation Fee less than $25,000, then the lesser of (i) 3.00% and (ii) such lower rate as would result in an aggregate Liquidation Fee equal to $25,000[.]" Id.

46. Should Plaintiff obtain the judgment sought herein and should the Property be sold at a foreclosure sale pursuant to said judgment, Special Servicer would be entitled to the payment of Liquidation Proceeds from Plaintiff.

47. Here, the Liquidation Proceeds equate to $51,822,162.71, which is the sum of the Loan's $41,000,000.00 Principal Balance, $4,999,130.00 of Accumulated Interest, a $50 NSF Fee, $589,793.81 of Interest on Advances, $2,356,152.56 of Tax Advances, $287,384.79 of Property Protective Advances, $273,902.83 of Special Servicing Fees, a $2,314,641.00 Yield Maintenance

14

Premium, a $157.72 UCC Filing Fee, and a $950.00 Payoff Fee (all as delineated on the Amount Due Schedule hereto). See Ex. 7-A.

48. Accordingly, Plaintiff has incurred a Liquidation Fee of $518,221.63, or 1% of the Liquidation Proceeds calculated above and therefore, is entitled to recover this sum from the Borrower. Id.

49. There are no just debts, set-offs, credits or allowances due or to become due from Plaintiff to Borrower, other than those set forth herein.

50. Plaintiff has brought no other action or proceeding to recover any part of the mortgage indebtedness herein described.

Executed this 9st day of August, 2023

_____
JOAO GAUER

## SCHEDULE A
### (Amount Due Schedule )

| | |
|---|---:|
| Principal Balance | $41,000,000.00 |
| Accumulated Interest at Non-Default Rate | $4,999,130.00 |
| Accumulated Interest at Default Rate | $7,961,075.62 |
| Late Fees | $368,219.54 |
| NSF Fee | $50.00 |
| Estimated Interest on Advances | $589,793.81 |
| Tax Advances | $2,356,152.56 |
| Property Protective Advances | $287,384.79 |
| SS Fees | $273,902.83 |
| Liquidation Fee | $518,221.63 |
| Yield Maintenance Premium | $2,314,641.00 |
| UCC Filing Fee | $157.52 |
| Interests on Advances | $950.00 |
| Unpaid Legal Fees and Expenses through June 30, 2023 | $20,824.29 |
| Reserve Balance | ($80,319.37) |
| **TOTAL AMOUNT DUE AS OF August 6, 2023** | **$60,610,184.42** |

#226737266_v2 527548.00059